UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

VIRGINIA ANN SMITH                                                                PLAINTIFF

VERSUS                                                     CIVIL ACTION NO. 2:23-CV-187-RPM

CITY OF HATTIESBURG POLICE
DEPT. et al                                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Virginia Ann Smith, proceeding *pro se* and *in forma pauperis*, filed the instant cause of action against Defendants City of Hattiesburg Police Department, Captain Johnson, Briana Clark, and Jacob Hiatt. Doc. [1]. In her original complaint she alleged the Defendants violated her civil rights when they seized her dog—a pit bull named Baby. According to Plaintiff, the landlord changed the locks on the door to Plaintiff's apartment, leaving her dog locked in the apartment for five days. Plaintiff called the police for assistance. Instead of assisting Plaintiff, the officers confiscated her dog. She seeks $500,000 in damages.

On May 3, 2024, the Court conducted a screening hearing to explore the claims in Plaintiff's complaint. According to Plaintiff, at the time of the incident (February 21, 2023) she had been evicted from her apartment; however, the eviction was on appeal. Accordingly, Plaintiff continued to live in the apartment during the eviction appeal process. At some point, Plaintiff stopped paying the light bill. As a result, the power was turned off February 6, 2023. Because the power had been turned off, Plaintiff stopped residing at the apartment; but Baby continued to live there. Plaintiff would go to the apartment four or five times a day to take care of Baby.

On February 16, 2023, the landlord changed the locks on the apartment because Plaintiff had failed to pay the power bill.  The landlord placed a notice on Plaintiff's door indicating she cannot live in her apartment without active power service.  *See* Doc. [1-3].  As a result, Baby was locked in the apartment and Plaintiff could not get access to take care of Baby.  Plaintiff called the police asking them to help with the situation and to serve as a mediator between Plaintiff and the landlord.  She wanted the police to "deescalate" the situation.  In essence, she wanted the police to come to the apartment several times a day and compel the landlord to let Plaintiff into the apartment so she could take care of her dog.

In response to her call, the police met Plaintiff at her apartment on February 21, 2023.  The police contacted the landlord, who also arrived.  The officers gave Plaintiff the option to take Baby with her, but Plaintiff declined because she did not have a home where she could take the dog.  Instead, she wanted the dog to remain in the apartment but for the landlord, with a police presence, to unlock the apartment three or four times per day to allow Plaintiff access to take care of Baby.  The police refused this request.  At one point, an officer threatened to arrest her for trespassing.

When Plaintiff declined the option of taking the dog with her, officers summoned the animal control officer, Brianna Clark.  According to Plaintiff, the dog was removed because it was against code to leave a dog unsupervised for more than 24 hours.  Officers told her she had neglected and abandoned her dog, which she denies; however, the dog admittedly had been left unattended in the apartment from February 16th to February 21st.  While driving off with the dog, the animal control officer had a minor traffic accident in the parking lot.  Plaintiff claims the dog was uninjured but witnessing the accident caused Plaintiff emotional distress.

In the days immediately after the incident, Plaintiff went to the police department several times to complain about the officers' conduct and to get information so she could file a complaint against them. She explained to the police officers that she needed the information to file a complete and accurate report. Plaintiff alleges that on one occasion Captain Johnson told her she needed to leave the building because she was harassing people; he was going to arrest her for harassment. Although she alleges the police did not want to assist her in filing the complaint, she stated that on February 24, 2023, a mere three days after the incident, Internal Affairs gave her the information needed to file a report. About nine days after Baby was removed from the apartment, and shortly after Plaintiff had filed her report, the police returned Baby to Plaintiff. The dog's return also coincided with power being restored to Plaintiff's apartment. Approximately two weeks later, Plaintiff gave the dog away because the landlord signed a paper saying she could not keep a dog at the apartment.

Plaintiff alleges that the police officers' refusal to give her information and refusing customer service violated their duty to protect and serve. According to her testimony, it was Plaintiff's intention to protect the officers' best interest and to teach them how to obey the law. Plaintiff stated she filed the lawsuit to solve a problem, to serve everyone's best interest, and to prevent this from happening to anybody else.

On February 7, 2025, Plaintiff filed an amended complaint, which largely restated the claims addressed in the original complaint and the screening hearing. Doc. [8]. She named as additional defendants Allen Ellis, Hunter, the City of Hattiesburg Administration, Ann Jones, Randy Polk, and Toby Barker. Plaintiff also included a claim that her landlord failed to fix issues at her apartment and specifically had failed to repair a water leak which caused mold. Plaintiff alleges she complained to the "code department" on June 13, 2024, which resulted in

3

the leak being repaired on July 6, 2024, but the mold remained. She was told by city employees that the mold was not a code enforcement issue. Plaintiff appears to sue the City of Hattiesburg for failing to address the mold issue. Plaintiff also alleges that on November 23, 2024, she called police to complain that a neighbor was blocking her car. The responding officer did not take a report but told Plaintiff that her apartment "was the problem every time." In the amended complaint, Plaintiff increased her demand from $500,000 to $5 million.

## Law and Analysis

Plaintiff is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Court is allowed to dismiss an *in forma pauperis* complaint if it fails to state a claim upon which relief may be granted. *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011). The analysis for determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is the same as the one employed under Fed.R.Civ.P. 12(b)(6). *See Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998).

Under some circumstances, the seizure of a pet dog by law enforcement officers, may implicate the dog owner's constitutional rights. More specifically, killing a pet dog constitutes a seizure which must be evaluated for reasonableness under the Fourth Amendment. *Ramirez v. Killian*, 113 F.4th 415, 427 (5th Cir. 2024). In the instant case, Plaintiff's dog survived the incident but was taken from Plaintiff's custody for a period of approximately nine days. Under Mississippi law, dogs are considered property. *Estate of Hold v. City of Hattiesburg*, 800 F.App'x 228, 232 (5th Cir. 2020). Negligent and intentional deprivations of property do not violate constitutional due process if adequate and meaningful post-deprivation remedies are available. *Leibowitz v. City of Mineola, Tex.*, 660 F.Supp.2d 775, 784-85 (E.D.Tex. 2009). Dog owners are entitled to due process protection of their property interest, if they protect that interest

4

by complying with reasonable regulations relating to the care and keeping of dogs. *Estate of Hold*, 800 F.App'x at 232.

Here, Plaintiff's dog was removed from Plaintiff's custody. By her own admission, the dog was locked in an apartment for several days without supervision and care. Plaintiff could not gain access to the apartment because she had failed to pay the light bill, which resulted in the landlord changing the locks. Officers gave Plaintiff the opportunity to take the dog with her, but she declined. For the welfare of the dog, the officers then removed Baby from the apartment. *See Warner v. Vermilion Parish Rabies & Animal* , 2022 WL 14813414, at *11-12 (W.D.La. Sept. 22, 2022) (finding no constitutional violation when officers seized abandoned dogs).

The lights were restored at Plaintiff's apartment nine days later; and the officers returned the dog to her on the same day—although she admittedly got rid of the dog two weeks after it was returned. Plaintiff also had filed a police report shortly after the dog was impounded. According to Plaintiff, the report and ensuing investigation resulted in the successful return of her dog. This successful post-deprivation remedy satisfied any constitutional due process concerns. *See Gall v. City of Vior, Tex.*, 903 F.Supp. 1062, 1067 (E.D.Tex. Oct. 2, 1995) (finding no due process violation when animals were returned soon after their impoundment). Plaintiff cannot demonstrate that the post-deprivation remedy was inadequate. *See Leibowitz*, 660 F.Supp.2d at 784.

Plaintiff's claims of harassment and retaliation also fail. She indicates that officers and employees at the Hattiesburg Police Department refused to help her get information she needed to file a report regarding the dog seizure. Plaintiff admits that a mere three days after the incident, Internal Affairs gave her the information she needed to fill out a report. To the extent Plaintiff claims officers threatened to arrest her, the mere threat of arrest does not state a

constitutional claim.  *See Renneke v. Florence County, Wis.*, 594 F.App'x 878, 880 (7th Cir. 2014); *Brown v. Sweeney*, 526 F.Supp.2d 126, 132 (D.Mass. 2007); *Thomas v. Weiss*, 2024 WL 2830662, at *14 (D.N.J. June 4, 2024) (collecting cases).  Based on the foregoing, the Court finds that Plaintiff's complaint fails to state a claim under § 1983 for conduct related to the dog seizure.

Plaintiff's claims regarding apartment repairs, code enforcement, and a neighbor blocking her car are not properly joined to the instant lawsuit.  A district court has discretion under Rule 20(a) to control the scope of a lawsuit by limiting the number of defendants a plaintiff may bring into court in a particular case.  *Tuft v. Texas*, 397 F. App'x 59, 61 (5th Cir. 2010).  If the Court finds parties to be misjoined, it "may at any time, on just terms, add or drop a party," or "sever any claim against a party."  Fed.R.Civ.P. 21.  The incidents alleged in the amended complaint occurred after Plaintiff filed the original complaint and do not arise "out of the same transaction, occurrence, or series of transactions or occurrences" as the claims in Plaintiff's original complaint.  Plaintiff names new defendants engaged in post-complaint conduct unrelated to the dog incident.  Accordingly, these claims should be dismissed without prejudice.  *See* Fed.R.Civ.P. 18 & 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Tuft*, 397 F.App'x at 61; *Tuft v. Chaney*, 2006 WL 2247813, at *1 (S.D. Tex. Aug. 4, 2006); *see also Patton v. Jefferson Corr. Center*, 136 F.3d 458, 464 (5th Cir. 1998) (recognizing that § 1915 intended to prevent creative joinder of actions).  To the extent Plaintiff wishes to pursue unrelated claims she would be required to file a separate complaint.  *See Robinson v. Stone*, 2009 WL 790130, at *4 (N.D.Tex. Mar. 25, 2009).

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's complaint is dismissed with prejudice as to all claims asserted in her original complaint and without prejudice as to the new claims asserted in her amended complaint.

SO ORDERED AND ADJUDGED, this the 8th day of September 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE